UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-148-FDW
(3:09-cr-81-FDW-MOC-1)

| | |
|---|---|
| TALVIN LEAK, ) | |
| ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Response to Petitioner's Motion to Vacate, (Doc. No. 5).

I. BACKGROUND

On October 28, 2008, officers from the Charlotte-Mecklenburg Police Department worked with a confidential informant to investigate a suspected drug dealer. (Criminal Case No. 3:09cr81, Doc. No. 23 at 2: Order on Motion to Suppress). As part of the investigation, officers listened in while the informant called the suspect to make arrangements to meet for a drug deal. (Id.). The suspect told the informant to meet him in a nearby gas station parking lot and advised that he would be driving a black Cadillac SUV. (Id.). While waiting in an unmarked car, officers observed an individual, who they later learned was Petitioner Talvin Leak, enter the parking lot where the meeting was to take place driving a black SUV that matched the

1

description of the suspect's vehicle.  (Id.).

In an attempt to verify the suspect's identity, officers asked the informant to call the suspect and suggest an alternate location for the meeting.  (Id.).  After the call, Petitioner left the parking lot and drove towards the second meeting place.  (Id. at 3).  Officers began following the black SUV and, after observing Petitioner run a stop sign, executed a traffic stop with the assistance of other officers.  (Id.).  At the outset of the traffic stop, officers asked Petitioner for his license and registration.  (Id. at 4).  Petitioner provided a license but admitted that it was suspended.  (Id.).  Officers then ordered Petitioner out of the vehicle to arrest him for driving with a suspended license.  (Id.).  During the encounter, officers retrieved a 9-mm handgun from Petitioner's waistband after he admitted to officers that he was armed.  (Id.).

While arresting Petitioner, one of the officers also observed a small plastic baggie between the center console and the driver's seat.  (Id.).  A subsequent search of the vehicle revealed 6.15 grams of crack cocaine divided into 40 individual portions for sale.  (Id.).  Officers later learned that Petitioner was a convicted felon and could not lawfully possess a firearm.  (Id.).

On April 22, 2009, the Grand Jury for the Western District of North Carolina charged Petitioner in a three-count bill of indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g); possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). (Criminal Case No. 3:09cr81, Doc. No. 1 at 2: Bill of Indictment).  On October 19, 2009, the Government filed an information pursuant to 21 U.S.C. § 851, providing notice of its intent to seek an enhanced sentenced based on Petitioner's previous convictions for felony drug offenses.  (Id., Doc. No. 10: Information

Pursuant to 21 U.S.C. § 851).

Before trial, Petitioner moved to suppress all evidence seized from his vehicle, contending that officers lacked justification for the search. (Id., Doc. No. 12: Motion to Suppress). On January 5, 2010, this Court conducted a hearing on Petitioner's motion at which Petitioner as well as several of the officers involved in the traffic stop testified. (Id., Doc. No. 42 at 23-107: Tr. of Suppression H'rg). During his testimony, Petitioner admitted that the cocaine belonged to him and that he was driving to meet another individual to exchange the drugs. (Id. at 111). After the hearing, in a written order, this Court denied Petitioner's motion to suppress, concluding that officers reasonably believed that the vehicle potentially contained evidence related to Petitioner's gun offense or, alternatively, that officers had probable cause to search the vehicle based on their investigation that night of Petitioner's suspected drug dealing. (Id., Doc. No. 23 at 7; 15). Following the Court's ruling, Petitioner entered into a written plea agreement, in which he agreed to plead guilty to the drug trafficking charge, while reserving the right to appeal the denial of his motion to suppress. (Id., Doc. No. 25 at 1: Plea Agreement).

In exchange for the concessions made by the Government, Petitioner agreed to waive his right to appeal or collaterally attack his sentence or conviction, with the exception of the denial of his motion to suppress and claims of ineffective assistance of counsel or prosecutorial misconduct. (Id. at 6). After conducting a Rule 11 hearing, Magistrate Judge David S. Cayer found Petitioner's plea was knowingly and voluntarily made and accepted it. (Id., Doc. No. 43: Tr. of Plea & Rule 11 H'rg).

In preparation for sentencing, the probation officer prepared a presentence investigation report ("PSR"). (Id., Doc. No. 31: PSR). The probation officer concluded that Petitioner, who

3

had four prior convictions for controlled substance offenses, qualified as a career offender under United States Sentencing Guidelines § 4B1.1. (Id. at 5). Based on Petitioner's status as a career offender, the probation officer concluded, after applying a three-level reduction for acceptance of responsibility, that Petitioner's total offense level was 34 and that he qualified for a criminal history category of VI, resulting in a guidelines range of imprisonment of 262 to 327 months. (Id. at 5; 16).

At Petitioner's sentencing hearing held April 11, 2011, this Court adopted the PSR for purposes of the advisory guidelines range. (Id., Doc. No. 44 at 5: Transcript of Sentencing H'rg.). In so doing, the Court ruled that the amendments to the crack cocaine guidelines adopted in response to the Fair Sentencing Act of 2010 did not apply retroactively to Petitioner but, in an effort to avoid unwarranted sentencing disparities, nevertheless granted a variance to the lower range of 188 to 235 months provided for by the amendments. (Id. at 35-36). This Court then summarized the relevant sentencing factors and sentenced Petitioner to 216 months. (Id. at 37). Judgment was entered May 4, 2011, and Petitioner filed a notice of appeal the following day.

Petitioner's counsel submitted a brief pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious issues for appeal, but questioning whether the Court properly denied Petitioner's motion to suppress. (Criminal Case No. 3:09-c4-81, Doc. No. 34: Judgment). Petitioner also filed a supplemental pro se brief in which he argued that the traffic stop was not justified because officers did not observe him commit a traffic violation; that the officers' stated justification was merely a pretext to search Petitioner's car; and that officers needed a wiretap warrant before phoning Petitioner to set up a controlled purchase of narcotics. The Fourth Circuit affirmed in an unpublished, per curiam opinion filed February 2, 2012.

4

United States v. Leak, 464 F. App'x 92 (4th Cir. 2012).

Petitioner placed the instant motion to vacate in the prison mail system on or about March 1, 2012, and it was stamp-filed in this Court on March 2, 2012. In the motion to vacate, Petitioner contends that (1) the Government violated Petitioner's Fourth Amendment rights by failing to obtain a wiretap before calling Petitioner; (2) the Government failed to provide expert testimony to establish the chemical composition of the cocaine seized from Petitioner's vehicle; and (3) Petitioner received ineffective assistance of counsel regarding the decision to testify at the suppression hearing. On December 17, 2012, the Government filed a Response to the motion to vacate. (Doc. No. 5).

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the argument presented by the Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

**1. Petitioner's First Two Claims--Waiver of the Right to Challenge His Conviction and Sentence in a Post-Conviction Proceeding**

Petitioner's first two claims—that the Government failed to obtain a wiretap before phoning Petitioner in violation of his constitutional rights, and that the Government failed to provide expert testimony to establish the chemical composition of the cocaine seized from his vehicle,

must fail because in his plea agreement Petitioner waived the right to bring claims other than those alleging prosecutorial misconduct or ineffective assistance of counsel. Such waiver is enforceable as long as the defendant waives this right knowingly and voluntarily. See United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005) ("[A] criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary."). Here, Petitioner does not allege in his motion that his plea was either unknowing or involuntary, nor could he, as the Rule 11 colloquy establishes that he pled guilty understanding the charge to which he was pleading guilty as well as the consequences of his plea, including his waiver of his right to challenge on collateral review his sentence based on grounds other than ineffective assistance of counsel or prosecutorial misconduct. Petitioner's first two claims allege neither ineffective assistance of counsel nor prosecutorial misconduct. Accordingly, neither of the exceptions to his waiver applies.[1]

### 2. Petitioner's Third Claim of Ineffective Assistance of Counsel

Next, as to Petitioner's third claim—that he received ineffective assistance of counsel regarding the decision to testify at the suppression hearing—this claim is without merit. The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance

---

[1] Respondent contends that, in addition to the fact that Petitioner waived the right to bring these first two claims, these claims are also procedurally barred for failure to raise them on direct appeal. While it does appear that Petitioner failed to raise his claim that the Government failed to provide expert testimony to establish the chemical composition of the cocaine seized from his vehicle, Petitioner did appear, in his own pro se brief, to raise the claim that the Government violated Petitioner's constitutional rights by failing to obtain a wiretap before phoning Petitioner. In any event, both of these first two claims are subject to dismissal based on the waiver in the plea agreement.

by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000). Finally, to demonstrate prejudice in the context of a guilty plea, a petitioner must be show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Petitioner contends, without elaboration, that his attorney failed to advise him not to testify during the suppression hearing. Petitioner fails, however, to allege that the error had any impact on his conviction or sentence, or that he would not have pled guilty but for counsel's error. This Court's findings of fact in support of its denial of the motion to suppress were based largely on the testimony of the officers involved in the traffic stop. Accordingly, Petitioner's testimony had little impact on, and certainly did not change the outcome of, his suppression hearing. Furthermore, Petitioner does not suggest that his testimony at the suppression hearing impacted

his decision to plead guilty or that he would not have pled guilty had he not testified at the suppression hearing. Accordingly, even if Petitioner could show that counsel's performance was deficient, which he cannot, Petitioner has wholly failed to allege or show prejudice.

IV.     **CONCLUSION**

For the reasons stated herein, the Court will dismiss the § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: May 14, 2013

Frank D. Whitney
United States District Judge